1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  MICHAEL MCCUNE,                    )   Case No. 2:10-CV-02207 JAM-GGH
                                       )
12                   Plaintiff,        )   ORDER GRANTING PLAINTIFF'S
                                       )   UNOPPOSED MOTION FOR SUMMARY
13       v.                            )   JUDGMENT AND ORDER TO SHOW
                                       )   CAUSE
14  SATNAM SINGH,                      )
                                       )
15                   Defendant.        )
                                       )
16  _____  )

17

18       This matter is before the Court on Plaintiff Michael McCune's

19  ("Plaintiff") Motion for Summary Judgment or Partial Summary

20  Judgment in the Alternative (Doc. ## 41-42).[1]  Plaintiff seeks

21  summary judgment on his claims under the Americans With

22  Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111-12300;

23  California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code

24  § 51, et. seq.; and the California Disabled Persons Act ("CDPA"),

25  Cal. Civ. Code § 54, et seq.  Defendant Satnam Singh ("Defendant")

26  did not file an opposition to Plaintiff's motion.

27  _____

28  [1] This motion was determined to be suitable for decision without
    oral argument. E.D. Cal. L.R. 230(g).  The hearing was scheduled
    for July 11, 2012.

                                   1

I.     BACKGROUND

A.   Procedural History

This action originated when Plaintiff filed his Complaint in this Court on August 17, 2010 (Doc. # 1).  In response to an intervening decision issued by the Ninth Circuit Court of Appeals, Plaintiff was given leave to amend his Complaint, and he filed a First Amended Complaint ("FAC") on June 20, 2011 (Doc. # 21).  See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (requiring an ADA plaintiff to indicate what barriers he or she encountered and how the barriers affected the plaintiff's disability such that he or she was denied full and equal access to the public accommodation).

On November 28, 2011, the Clerk entered the default of Defendant for failure to respond to the FAC (Doc. # 27).  Defendant subsequently obtained counsel, and the entry of default was set aside based upon Defendant's showing of good cause on January 27, 2012 (Doc. # 36). On February 29, 2012, the parties filed a joint status report wherein Defendant indicated his desire for a settlement conference and Plaintiff indicated that he intended to move for summary judgment (Doc. # 39).  Plaintiff then filed the instant motion on May 24, 2012.

B.   Factual Background

The Court has reviewed all of the affidavits and exhibits submitted in support of Plaintiff's unopposed motion and finds that the undisputed facts are as follows.  The factual basis for this lawsuit arose when Plaintiff and his wife visited a shopping plaza owned by Defendant located at 3950-3960 Cambridge Road, Cameron Park, California (the "Plaza").  The Plaza contains several small

businesses including a liquor store, hardware store, and dry
cleaner.  Plaintiff, who is a C5-C6 quadriplegic and requires the
use of an electric wheelchair when traveling in public, found that
the Plaza was not accessible because of his disability.

On May 4, 2010 Plaintiff went to the liquor and hardware
stores located in the Plaza.  Plaintiff was unable to find a van-
accessible parking space to accommodate his wheelchair-lift
equipped van.  Plaintiff parked his van in a disabled parking space
that was not designated as van accessible and exited the van.  Once
he exited the van, Plaintiff was unable to find an unobstructed
pathway to the stores he intended to visit.  The walkway to the
stores was obstructed by a newspaper dispenser, a propone tank
cage, and parked cars that encroached into the walkway.  Plaintiff
returned to the parking lot and traveled behind parked cars to
enter the liquor store.

The Plaza's parking lot is divided into a Northern section and
a Southern section by an area filled with pallets of gardening
supplies.  The Southern section was constructed in 1979, and the
Northern section was constructed in 1988.  Plaintiff was forced to
travel through the parking lot, travelling around the pallet area,
in order to reach the walkway in the North side of the parking lot
after leaving the liquor store located in the South side.  Once
Plaintiff reached the North side walkway, he discovered that the
walkway on that side of the plaza was also obstructed, and he was
forced to travel to the hardware store entrance through the North
side parking lot.

On May 17 and 27, 2010, Plaintiff returned to the Plaza to
visit the dry cleaning business located in the South side of the

Plaza.  When Plaintiff returned, he observed the same obstacles he
encountered on his May 4 visit and opted to remain in the car
rather than navigate the obstacles to enter the dry cleaner's
store.  Finally, Plaintiff returned to the Plaza on August 19, 2010
to visit the hardware store on the North side of the Plaza,
encountering the same access difficulties that he experienced on
the May 4 visit.

Plaintiff's characterization of the access issues he
encountered are verified by two reports attached as exhibits to
declarations submitted by Plaintiff in support of his motion.
First, Plaintiff's expert Joe Card provided a declaration supported
by a detailed report of accessibility issues at the Plaza.  Mr.
Card has over 30 years of experience in the construction business
and significant training specific to ADA compliance.  Mr. Card was
also found to be a qualified expert witness in at least five
federal lawsuits.  Plaintiff also submitted a report prepared at
Defendant's request by Ronald P. Armstrong, the CEO of CASP
Masters, LLC.

The Court finds that Mr. Card, by virtue of his extensive
personal experience with ADA compliance and specialized knowledge
related to ADA compliance, to be a qualified expert pursuant to
Federal Rule of Evidence 702(a) for the purposes of this motion.
Mr. Armstrong's credentials are not presently before the Court, so
he is not an expert.  Mr. Armstrong's report, however, corroborates
Mr. Card's, so there is no dispute as to the physical condition of
the Plaza as it relates to Plaintiff's access.  Accordingly, based
on the evidence before the Court, the Court finds the following
related to the physical condition of the Plaza when Plaintiff

visited:

    1.   The tow away signage posted in the parking lot did not contain information about where to retrieve a towed vehicle;

    2.   Tow away signage was posted at the entrances to the parking lot such that an exiting vehicle could block it from the view of entering vehicles;

    3.   The disabled parking spaces were not designated with accessible signage;

    4.   There were no parking spaces designated as van accessible;

    5.   The disabled parking spaces had slopes and cross slopes exceeding 2.0% grade;

    6.   The access aisles had slopes and cross slopes that exceeded 2.0% grade;

    7.   There were no level landings at the entrances to the stores within the Plaza;

    8.   None of the parking spaces had wheel stops preventing parking cars from encroaching onto the walkways in front of the Plaza and reducing the passable route to less than 36 inches in width;

    9.   The sidewalks throughout the Plaza had slopes and cross slopes that exceeded 2.0% grade; and

    10.   The accessible routes from the disabled parking spaces to the store entrances were blocked at multiple points and inaccessible to Plaintiff's wheelchair.

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II.     OPINION

A.   Legal Standard for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Electrical Services, Inc. v. Pacific Electric Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the facts and draw inferences in the manner most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "[M]ere disagreement or bald assertion that a genuine issue of material fact exists will not preclude the grant of summary judgment".  Harper v. Wallingford, 877 F. 2d 728, 731 (9th Cir. 1987).

The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "There must be evidence on which the jury could reasonably find for [the non-moving party]."  Anderson, 477 U.S. at 252.  This Court thus

applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.

## B.   Discussion

For the purposes of the present motion, Defendant does not oppose summary judgment and thus does not attempt to create a genuine issue of material fact.  Plaintiff, therefore, must only meet his burden of showing the absence of a genuine issue of material fact.  Accordingly, if the undisputed facts as found by the Court in the preceding section support an entry of judgment as a matter of law, then Plaintiff is entitled to judgment.

### 1.   ADA Claim

In order to prevail on an ADA discrimination claim, a plaintiff must show: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) he was denied public accommodations by the defendant because of his disability. Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).

#### a.   Disabled Within the Meaning of the ADA

Plaintiff is a C5-C6 quadriplegic, which meets the definition of disabled for purposes of the ADA.  42 U.S.C. § 12102; see Molski, 481 F.3d at 732 (holding that a paraplegic person is disabled under the ADA).

#### b.   Defendant Owns, Leases, or Operates a Public Accommodation

Defendant is the current owner of the Plaza, and the Plaza as

1  a shopping center is a public accommodation for purposes of the
2  ADA.   42 USCA § 12181(7)(e).   This element is not subject to
3  reasonable dispute.

           c.   <u>Plaintiff Was Denied Access Because of His Disability</u>

6      The Americans with Disabilities Act Accessibility Guidelines
7  (the "ADAAG") provides guidelines for compliance with the ADA.
8  Since the ADAAG "establishes the technical standards required for
9  full and equal enjoyment, if a barrier violating these standards
10 relates to a plaintiff's disability, it will impair the plaintiff's
11 full and equal access, which constitutes discrimination under the
12 ADA." <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 631 F.3d 939, 947
13 (9th Cir. 2011) (internal quotations omitted).   In order for a
14 plaintiff to have standing to bring suit, a violation of the ADAAG
15 must relate to the plaintiff's actual disability such that his
16 access would be limited.   <u>Id.</u>
17     In this case, the evidence shows that Plaintiff encountered
18 the following conditions:
19     1.   The disabled parking spaces were not designated with
20 accessible signage in violation of ADAAG § 4.6.4;
21     2.   There were no parking spaces designated as van accessible
22 in violation of ADAAG § 4.1.2(5)(b);
23     3.   None of the parking spaces had wheel stops preventing
24 parking cars from encroaching onto the walkways in front of the
25 Plaza and reducing the passable route to less than 36 inches in
26 width in violation of ADAAG §§ 4.3.3, 4.6.3, 4.7.2;
27     4.   The sidewalks throughout the Plaza had slopes and cross
28 slopes that exceeded 2.0% grade in violation of ADAAG § 4.3.7;

5.    The disabled parking spaces in the Plaza's parking lot had slopes and cross slopes exceeding 2.0% in violation of ADAAG § 4.6.3; and

6.    The accessible routes from the disabled parking spaces to the store entrances were blocked at multiple points and inaccessible to Plaintiff's wheelchair in violation of ADAAG § 4.3.2; and

7.    There were no level landings at the entrances to the stores within the Plaza in violation of ADAAG § 4.13.6.

Plaintiff also declared that the above conditions all relate to his disability because they make it difficult or impossible for him to safely navigate the plaza in his electric wheelchair. McCune Decl. ¶¶ 9, 14, 19, 26.

Based on the uncontroverted evidence of multiple violations of the ADAAG at the Plaza, owned and operated by Defendants, that specifically relate to Plaintiff's disability, the Court finds that entry of judgment on Plaintiff's ADA claim is appropriate. Plaintiff's motion on this claim is therefore granted.

Plaintiff does not specify what type of relief he seeks in his motion.  His FAC mentions declaratory relief, injunctive relief, and attorney's fees.  FAC § 10.  The Court, however, is not presented with sufficient information to issue an injunction or award attorney's fees.  Accordingly, the Court only enters a declaratory judgment at this time in Plaintiff's favor on the ADA claim.  28 U.S.C. § 2201.

2.    Unruh Act AND CDPA Claims

Pursuant to Cal. Civil Code §§ 51(f) and 54(c), a violation of the ADA is also a violation of the Unruh Act and the CDPA.  Moeller

v. Taco Bell Corp., 220 F.R.D. 604, 606–607 (N.D. Cal. 2004).  The
Unruh Act provides for statutory minimum damages of $4,000 for each
instance of discrimination.  Grove v. De La Cruz, 407 F.Supp.2d
1126, 1133 (C.D. Cal. 2005).  The CDPA provides for minimum damages
of $1,000 per instance of discrimination.  Cal. Civil Code
§ 54.3(a).  Plaintiff visited the Plaza four times to patronize its
stores and encountered barriers to access each time in violation of
the ADA, and he is therefore entitled to $16,000 in damages under
the Unruh Act, $4,000 for each visit.  Judgment is accordingly
entered in Plaintiff's favor on the Unruh Act and CDPA claims, and
he is awarded $16,000 in damages.

## III.    DEFENDANT'S NON-OPPOSITION

Defendant did not file an opposition or statement of non-
opposition to Plaintiff's Motion for Summary Judgment.  Local Rule
230(c) requires a non-moving party to file either an opposition to
the motion or a statement of non-opposition no less than fourteen
(14) days preceding the noticed hearing date.  Local Rule 110
authorizes the Court to impose sanctions for "failure of counsel or
of a party to comply with these Rules."  Therefore, the Court will
sanction Defendant's counsel, Moton B. Holt, Jr., $150.00 unless he
shows good cause for his failure to comply with the Local Rules.

## IV.    ORDER

For the reasons stated above, the Court issues the following
order:

1.   Plaintiff's Motion for Summary Judgment on his ADA, Unruh
Act, and CDPA claims is GRANTED;

10

2.   Plaintiff is awarded $16,000 in statutory damages pursuant to the Unruh Act's statutory damages provision; and

3.   Defendant's Counsel, Morton B. Holt, Jr., is ordered to either (1) submit a statement of good cause for failing to comply with the local rules or (2) pay sanctions of $150.00 to the Clerk of Court.

IT IS SO ORDERED.

Dated:   July 18, 2012

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE